**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 17-128 |
| | ) | |
| RYAN WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPINION**

I.      Introduction

Pending before the court is a motion for compassionate release (ECF No. 93) filed pro se by defendant Ryan Williams ("Williams").  The government filed a response, conceding that Williams exhausted his administrative remedies within the Bureau of Prisons ("BOP"), but opposing relief on substantive grounds (ECF No. 98).  The motion is ripe for disposition.

II.     Procedural Background

Williams was indicted in this case on two counts: (1) distribution of fentanyl resulting in the death of a user; and (2) felon in possession of a firearm.  Because Williams has two prior felony drug convictions (*see* Presentence Report, ECF No. 77 ¶¶ 34, 36), he faced a sentence of mandatory life imprisonment if he was convicted.  (Indictment Memorandum, ECF No. 4).

In June 2019, Williams and the government entered into a Rule 11(c)(1)(C) plea agreement.  As pertinent to the pending motion, the government agreed to allow Williams to plead guilty to a lesser-included offense at count 1, i.e., distribution of a quantity of fentanyl (although Williams accepted responsibility for the death of the user); and plead guilty to count 2. The government also agreed to not file a § 851 Information about Williams' prior felony drug

convictions.  The parties stipulated that the appropriate sentence was a term of 151 months of imprisonment at count 1 and 120 months at count 2, to run concurrent; to be followed by 3 years of supervised release.  The parties agreed that "no other enhancements, departures, or variances are applicable or appropriate."  (ECF No. 98-1).  Williams agreed he would not seek relief under 18 U.S.C. § 3582(c)(2) if the sentencing guidelines were subsequently lowered by the sentencing commission.  Id.

On December 5, 2019, the court accepted the parties' binding plea agreement and imposed the agreed-upon sentence.  The term of imprisonment was at the low end of the advisory guideline range of 151-188 months for the lesser-included offense at count 1, which reflected Williams' designation as a career offender.

Williams is 34 years old and is currently incarcerated at FCI-Hazelton.   His projected release date is August 22, 2027.  The BOP reports no current active cases of COVID-19 among inmates or staff at FCI-Hazelton.  https://www.bop.gov/coronavirus/covid19_statistics.html, last visited April 19, 2023.  The government represents that Williams declined to be vaccinated against the COVID-19 virus on April 7, 2021 (ECF No. 98 at 6).  Williams did not present any evidence about his vaccination status, his risk of contracting the COVID-19 virus or his risk of experiencing severe symptoms if he does get infected.  Williams did not identify any preexisting medical conditions that may make him vulnerable to severe illness and death if exposed to COVID-19.  The Presentence Report (prepared in October 2019) reflects that Williams always enjoyed good physical health and does not suffer from any chronic illnesses or serious injuries. (ECF No. 77 at ¶ 56).

III.     Discussion

    **A.  Applicable Law**

Williams seeks compassionate release from imprisonment. A district court has only limited authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); United States v. Savani, 733 F.3d 56, 60 (3d Cir. 2013). The Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18 U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (explaining that "[s]entence modifications under § 3582(c) constitute 'exception[s] to the general rule of finality' of sentences") (quoting Dillon v. United States, 560 U.S. 817, 824 (2010)).

Section 3582(c)(1)(A) provides:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case--
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction; or
> > > >
> > > > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other

person or the community, as provided under section
3142(g);

and that such a reduction is consistent with applicable
policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). The statute sets forth a three-step analysis for district courts to utilize

to resolve a motion for compassionate release. The Third Circuit Court of Appeals has instructed

that pursuant to § 3582(c)(1)(A), "a district court 'may reduce [a federal inmate's] term of

imprisonment' and 'impose a term of probation or supervised release … if it finds that …

extraordinary and compelling reasons warrant such a reduction.'" United States v. Pawlowski,

967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[B]efore granting

compassionate release," however, "a district court must 'consider[] the factors set forth in [18

U.S.C. §] 3553(a) to the extent that they are applicable." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)).

The court must also consider whether a sentence reduction is consistent with applicable policy

statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A).  United States v.

Andrews, 12 F.4th 255, 258 (3d Cir. 2021) (prisoner's compassionate release motion "may be

granted if the court finds that the sentence reduction is (1) warranted by 'extraordinary and

compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing

Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a),

to the extent they are applicable.").

Based upon the foregoing, to grant Williams compassionate release under §

3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist

for his release; (2) compassionate release is warranted in consideration of the § 3553(a) factors;[1]

---

[1]       The factors set forth in 18 U.S.C. § 3553(a) are:

–   the nature and circumstances of the offense and the history and characteristics of the
    defendant, § 3553(a)(1);

and (3) compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

Williams bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant must produce evidence to the court. See e.g., United States v. Matthews, Crim. Action No. 09-612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); United States v. Brunetti, Crim. Action No. 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); United States v. Richardson, Crim. No. 18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).

### B.  Extraordinary and Compelling Reasons

#### 1.  General Background

Prior to the enactment of the First Step Act on December 21, 2018, only the Director of the BOP could file a motion for a sentence reduction under §3582(c)(1)(A)(i).  Ray v. Finley, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act amended § 3582(c)(1)(A), which now provides that "a motion for reduction in sentence may be filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts

---

- the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

- the sentencing range established by the Sentencing Commission, § 3553(a)(4);

- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);

- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

- the need to provide restitution to any victims of the offense, § 3553(a)(7).

administrative remedies. Id.

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation…alone' does not suffice." Adeyemi, 2020 WL 3642478, at *7 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." United States v. Handerhan, No. 19-1904, 789 F. App'x 924, 925 (3d Cir. 2019) (citing United States v. Barberena, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That commentary currently lists four categories of such reasons: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." Id. (quoting U.S.S.G. § 1B1.13 cmt. n.1.). The court in Adeyemi explained the first three categories as follows:

> The first category includes incarcerated persons suffering from terminal illnesses, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia, or those suffering from medical conditions, impairments, or deteriorations due to age that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."…The second category includes incarcerated persons who are at least sixty-five years old, experience a serious deterioration in physical or mental health because of the aging process; and have served at least ten years or seventy-five percent of their term of imprisonment, whichever is less….The third extraordinary and compelling reason may arise where the primary caregiver of the incarcerated person's minor child or children died or became incapacitated or where the incarcerated person's spouse became incapacitated and he is the only available caregiver for the spouse.

Adeyemi, 2020 WL 3642478, at *7 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)).

In Andrews, the court of appeals held that district courts are not strictly bound by the policy set forth in the sentencing guidelines.  Andrews, 12 F.4th at 259.  On the other hand, the district court "did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'"  Id.

The court in <u>Somerville</u> provided a helpful working definition:

The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); <u>see also</u> *Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").

The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); <u>see also</u> *Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met.").

Thus, at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate).

<u>Somerville</u>, 2020 WL 2781585, at *7.

## 2. Consideration of COVID-19

In <u>Somerville</u>, the court concluded that "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a ***uniquely high risk*** of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." <u>Somerville</u>, 2020 WL 2781585 at *4 (emphasis added). In <u>United States v. Thomas</u>, No. 21-1645, 2022 WL 296594 (3d Cir. Feb. 1, 2022), the Third Circuit Court of Appeals observed: "District courts routinely deny compassionate release to inmates who refuse the COVID-19 vaccine because they have voluntarily failed to mitigate the very health concerns they identify in support of an early release." <u>Id.</u> at *2 (citations omitted).

The court concludes that Williams did not meet his burden to demonstrate extraordinary and compelling reasons for compassionate release due to the COVID-19 pandemic. Williams did not identify any preexisting conditions. The record reflects that he is young (34) and enjoys good health. Williams's refusal to be vaccinated undercuts his alleged health concerns. In

addition, there is no evidence in this record of any current cases of COVID-19 infection among the inmates or staff at FCI-Hazelton.  The court recognizes that it is difficult to engage in social distancing and other mitigation efforts in a congregate setting such as a prison.  On the other hand, many inmates and staff members have now been vaccinated for COVID-19.  Vaccination of all or substantially all inmates and staff will limit the spread of the virus and reduce the risk of exposure.  In sum, it would be speculative at this point for the court to conclude there is an actual risk that Williams, even without a vaccination, will be infected by the COVID-19 virus.  The court cannot find that Williams met his burden to establish that he is at "*uniquely* high risk" of being infected with the COVID-19 virus or experiencing serious illness if he is infected with the COVID-19 virus.  To conclude otherwise would be speculative, based upon the record before this court.  In sum, Williams did not show an extraordinary and compelling reason for his compassionate release.

### 3.   Career Offender guideline

In essence, Williams argues that he should be entitled to compassionate release because his original sentence was based on his career offender designation.   There are several fundamental problems with this argument.  First, "[t]he duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance justifying compassionate release. Andrews, 12 F.4th at 260–61.  As the court explained, there is nothing extraordinary about leaving a lawful sentence in place.   Id. Second, Williams' sentence was **not** based on the advisory guideline calculation; rather, it was based on the parties' binding Rule 11(c)(1)(C) plea agreement.  In the plea agreement, Williams agreed with the government that a 151-month prison term was appropriate and that no enhancements, departures or variances were appropriate. Third, to the extent that Williams seeks to challenge the legality of his sentence, he must do so

by way of a § 2255 motion, not a motion for compassionate release.  See United States v. Womble, No. CR 13-507 (NLH), 2022 WL 1500957, at *3 (D.N.J. May 11, 2022) ("To the extent that Defendant seeks to use his motion for compassionate release as a vehicle to attack his designation as a career offender, such attacks are not cognizable under § 3852(c).") (citing United States v. Handerhan, 789 F. App'x 924, 926 (3d Cir. 2019)).  Fourth, the record in this case reflects that Williams was correctly designated as a career offender based on his two prior felony drug convictions.  But for the government's concessions in the plea agreement, Williams would have faced much more serious penalties.  In sum, Williams' arguments about the career offender designation do not warrant compassionate release.

### 4.  Section 3553(a) factors

Even assuming, arguendo, that Williams articulated extraordinary and compelling reasons, the court would deny his motion.  The compassionate release statute states that a court may reduce the term of imprisonment "after" it considers the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable.  18 U.S.C. § 3582(c)(1)(A).  Even if Williams established an extraordinary or compelling reason for release, release must also be consistent with the § 3553 factors and guidelines policies.  The court recognizes that the conditions of Williams' confinement have been more onerous than anticipated due to the COVID-19 virus.

The government emphasizes that Williams poses a danger to the community if released.  The "danger to the community" policy consideration in U.S.S.G. § 1B1.13 is somewhat similar to the § 3553(a)(2)(C) sentencing factor that a sentence "protect the public from further crimes of the defendant."  The government argues that Williams remains a danger to the community based on the seriousness of his crimes of conviction (fentanyl trafficking that caused the death of a user

and firearm possession) and his criminal history (particularly, his involvement in prior drug trafficking) and the commission of the offenses in this case while on supervision.

The court weighed the § 3553(a) factors in imposing the original sentence and deciding whether to adopt the parties' Rule 11(c)(1)(C) plea agreement. At that time, the court recognized that Williams engaged in very serious drug and gun offenses. Williams received a significant benefit from the government's agreements to allow him to plead to a lesser-included offense and to not file § 851 Informations about his prior drug convictions. Without those agreements, Williams faced mandatory life in prison if convicted.

Upon reexamining the § 3553(a) factors, the court adheres to its determination that a term of imprisonment of 151 months is warranted. Indeed, in the plea agreement, Williams and the government agreed that term of imprisonment was the appropriate sentence. A reduction of his sentence would not be consistent with the statutory sentencing purposes of just punishment, deterrence to criminal conduct and protection of the public from further crimes by the defendant, or the policies about binding plea agreements. In sum, the court reaffirms that a term of imprisonment of 151 months is sufficient, but not greater than necessary, to accomplish the sentencing purposes.

**V. Conclusion**

Once a court imposes a sentence and it becomes final, it may not be modified unless an exception to the rule of finality applies in the case. Here, Williams did not satisfy his burden under § 3582(c)(1)(A) to show that an extraordinary and compelling reason warrants his compassionate release from imprisonment. Even assuming Williams met that burden, compassionate release is not appropriate after consideration of the policies and § 3553(a) factors. His motion for compassionate release (ECF No. 93) will, therefore, be denied. The denial is without prejudice in the event Williams' circumstances or the conditions at his place of confinement change.

An appropriate order will be entered.

Dated:       April 20, 2023.

BY THE COURT:


s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge